# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **MARK KEATING, individually, and on behalf of all others similarly situated,**<br>20686 Chestnut Drive<br>Strongsville, OH 44149<br><br>and<br><br>**VICTORIA KEATING, individually, and on behalf of all others similarly situated,**<br>20686 Chestnut Drive<br>Strongsville, OH 44149<br><br>        Plaintiffs,<br><br>    v.<br><br>**SELECT PORTFOLIO SERVICING, INC.,**<br>c/o Corporation Service Company<br>50 West Broad Street, Suite 1330<br>Columbus, OH 43215<br><br>        Defendant. | Case No.<br><br><br><br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND REQUESTED** |

Plaintiffs Mark and Victoria Keating (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel, for their Class Action Complaint against Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant") state as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs are each a natural person residing in Cuyahoga County, Ohio.

2. Defendant is an incorporated business under the laws of the State of Utah that maintains its principal place of business at 3217 South Decker Lake Drive, Salt Lake City, Utah, 84119.

3. SPS does business in the state of Ohio and is licensed to do business in the state of Ohio as a foreign corporation.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

5. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Defendant solicited business in this District, Plaintiffs are each a resident of this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## RESPA AND REGULATION X

6. The Real Estate Settlement Procedures Act ("RESPA")—12 U.S.C. §§ 2601, *et seq.*—permits a borrower, or an agent of a borrower, to submit a "qualified written request" for information relative to a "federally related mortgage loan" to any servicer of such a loan.[1] 12 U.S.C. § 2605(e)(1).

7. RESPA provides that "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request… the servicer shall…provide the borrower with a written explanation or clarification that includes" the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2); 12 U.S.C. § 2605(e)(2)(C); 12 U.S.C. § 2605(e)(2)(C)(i)-(ii).

8. In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—which amended RESPA.

---

[1] Hereinafter, these qualified written requests shall be referred to as Requests for Information, or "RFIs."

9. The CFPB's RESPA Mortgage Servicing Final Rules—known as "Regulation X" and codified as 12 C.F.R. § 1024—were issued on January 17, 2013, and became effective on January 10, 2014.

10. Through Regulation X, the CFPB has provided guidance for the interpretation of the foregoing RESPA provisions.

11. Specifically, relative to RFIs, Regulation X provides that "a servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.36(a).

12. 12 C.F.R. § 1024.36(d)(1) provides that a servicer must respond to an RFI by either "[p]roviding the borrower with the requested information and contact information, including a telephone number, for further assistance in writing" or "[c]onducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance."

13. Notwithstanding the above, Regulation X provides for certain exceptions to servicers' obligations to respond to RFIs. Specifically, 12 C.F.R. § 1024.36(f)(1) provides that a servicer does not have to comply with 12 C.F.R. § 1024.36(d) if the request seeks substantially the same information as a prior request, the information sought is confidential, proprietary, or privileged, the information is not directly related to the borrower's specific mortgage loan account, or the request is overbroad or unduly burdensome.

14. If a servicer determines that it is exempted from responding to an RFI, pursuant to 12 C.F.R. § 1024.36(f)(1), Regulation X requires the servicer to "notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination," setting forth the specific "basis under paragraph (f)(1) of this section upon which the servicer has made such determination." 12 C.F.R. § 1024.36(f)(2).

15. If a qualified written request "asserts an error relating to the servicing of a mortgage loan," as described by 12 C.F.R. § 1024.35(a),[2] RESPA provides that "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request… the servicer shall" either (a) "make appropriate corrections in the account of the borrower;" (b) conduct an investigation, and "provide the borrower with a written explanation or clarification that includes…a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer;" or (c) conduct an investigation, and "provide the borrower with a written explanation or clarification that includes" the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(A)-(C).

16. RESPA further provides that a servicer of a federally related mortgage shall not fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, *or other standard servicer's duties*" (emphasis added). 12 U.S.C. § 2605(k)(1)(C).

---

[2] Hereinafter, these qualified written requests shall be referred to as Notices of Error, or "NOEs."

4

17. In addition to RESPA, 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to an NOE by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a phone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a phone number, for further assistance."

18. Notwithstanding the above, Regulation X provides for certain exceptions to servicers' obligations to respond to NOEs. Specifically, 12 C.F.R. § 1024.35(g)(1) provides that a servicer does not have to comply with 12 C.F.R. §§ 1024.35(d),(e), and (i) if the "asserted error is substantially the same as an error previously asserted by the borrower for which the servicer has previously complied with its obligation to respond", the NOE is so overbroad that "the servicer cannot reasonably determine from the notice of error the specific error that the borrower asserts has occurred on a borrower's account", or it has been more than one (1) year since servicing rights for the mortgage loan have transferred to a new servicer or since the mortgage loan was discharged—however, 12 C.F.R. § 1024.35(g)(2) requires written notice from the servicer within five (5) business days of their making such a determination.

## STATEMENT OF FACTS

19. SPS is a mortgage "servicer" as that term is defined by 12 C.F.R. § 1024.2(b) and 12 U.S.C. § 2605(i)(2). SPS is the current servicer of Plaintiffs' and Class members' notes, and

mortgages on real property that secure those notes (collectively referred to hereinafter as the "loans").

20. Plaintiffs' and Class members' loans are each a "federally related mortgage loan" as said term is defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

21. SPS is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 C.F.R. § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 C.F.R. § 617.700.

22. Plaintiffs and Class members submitted RFIs and/or NOEs (collectively, the "RESPA Request Letters") to SPS, each of which were "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B).

23. In response to Plaintiffs' and Class members' RESPA Request Letters, SPS replied with form letters claiming an "active litigation" exception to its obligations, and otherwise refused to provide a substantive response to such correspondence.

24. Plaintiffs and certain Class members—*i.e.*, members of "Subclass 1," defined below—sent NOEs to SPS concerning SPS's insufficient responses to Plaintiffs' and Class members' RESPA Request Letters (the "Follow-up NOEs").

25. SPS failed to provide adequate responses to Plaintiffs' and Class members' RESPA Request Letters. Specifically, SPS has not provided any of the requested information or performed a reasonable investigation into or correction of any alleged errors concerning Plaintiffs' and Class members' loans, as required by 12 C.F.R. § 1024.35, 12 C.F.R. § 1024.36, and 12 U.S.C. § 2605(e)(2)(B)-(C).

26. Plaintiffs and Class members were harmed because they incurred the expenses associated with sending the RESPA Request Letters—such as their time, postage, etc.—but they did not receive the information or the reasonable investigation into or correction of asserted errors to which they were legally entitled, pursuant to RESPA and Regulation X.

27. Subsequently, Plaintiffs and certain Class members—*i.e.*, members of "Subclass 1," defined below—sent NOEs to SPS concerning SPS's insufficient responses to Plaintiffs' and Class members' RESPA Request Letters (the "Follow-up NOEs").

28. In response to Plaintiffs' and Subclass 1 members' Follow-up NOEs, SPS again replied with form letters claiming an "active litigation" exception to its obligations, and otherwise refused to provide a substantive response to such correspondence.

29. Based upon its responses to Plaintiffs' and Subclass 1 members' Follow-up NOEs, SPS did not conduct any investigation into the specific errors made by the Plaintiffs and class members, nor did SPS attempt to correct those errors. Instead, SPS continued to rely on an "active litigation" exception, claiming that SPS would provide no response because the issues raised were the same or very closely related to the issues raised in pending litigation.

30. Had SPS adequately responded to Plaintiffs' and Subclass 1 members' RESPA Request Letters, Plaintiffs and Subclass 1 members would not have needed to send the Follow-up NOEs regarding SPS's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X. As such, Plaintiffs and Subclass 1 members were further harmed by SPS's failure to adequately respond to their RESPA Request Letters because it required them to incur the expenses associated with sending the Follow-up NOEs—such as their time, postage, etc.

31. As most homeowners sending RESPA Request Letters are involved in defending against foreclosure, accepting this kind of conduct would allow creditors to hide behind the foreclosure process to unlawfully extinguish their obligations under RESPA and Regulation X.

32. Plaintiffs and Class members are asserting claims for relief against SPS for breach of the duties owed to them, pursuant to 12 U.S.C. § 2605(e), 12 C.F.R. § 1024.35, and 12 C.F.R. § 1024.36.

33. Plaintiffs and Class members have a private right of action, pursuant to 12 U.S.C. § 2605(f), for the claimed breaches, and RESPA provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTS RELEVANT TO PLAINTIFFS

34. On December 13, 2017, Plaintiffs, by and through counsel, sent an NOE to SPS via Certified Mail (*See*, NOE sent from Plaintiffs to SPS, attached hereto as Exhibit 1 ("NOE #1")).

35. On December 29, 2017, SPS responded to NOE #1 ("Response to NOE #1") stating that "the issues presented in your letter are part of an ongoing litigation…Due to the current litigation, SPS believes that it would be more appropriate to refrain from providing a detailed response to you at this time" and that Plaintiffs could reach out to SPS's counsel in the related foreclosure action involving Plaintiffs' home. (*See*, SPS's Response to NOE #1, attached hereto as Exhibit 2).

36. Plaintiffs were harmed by SPS's failure to adequately respond to NOE #1 because it required them to incur costs relative to sending NOE #1—such as postage and attorneys' fees—but they did not receive the correction of the alleged errors on the loan to which they were legally entitled, pursuant to RESPA and Regulation X.

8

37.     Since SPS did not correct the errors alleged through NOE #1 and did not otherwise respond in compliance with 12 C.F.R. § 1024.35(e), Plaintiffs, by and through counsel, sent an NOE to SPS on January 9, 2018.  (*See*, NOE sent from Plaintiffs to SPS, attached hereto as Exhibit 3 ("NOE #2")).

38.     On January 29, 2018, SPS responded to NOE #2 ("SPS's Response to NOE #2") finally providing a substantive response to the issues presented through NOE #1 and reiterated through NOE #2.

39.     To date, neither SPS, nor counsel for SPS, has provided any other follow-up to Plaintiffs' RESPA Request Letters.

40.     Had SPS adequately responded to NOE #1, Plaintiffs would not have needed to send NOE #2 to SPS.  As such, Plaintiffs were harmed by SPS's failure to adequately respond to NOE #1 because it required them to incur additional costs—such as postage and attorneys' fees—relative to sending NOE #2.

## CLASS ACTION ALLEGATIONS

41.     **Class Definition**: Plaintiffs bring this action pursuant to Fed R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All loan borrowers in the United States (1) who submitted to SPS a "qualified written request," as defined by 12 U.S.C. § 2605(e)(1)(B), in the form of a Request for Information or Notice of Error, (2) to whom SPS refused to provide information or perform a reasonable investigation into the asserted errors because of a cited "active litigation" exception.

42.     **Subclass 1 Definition**:  Plaintiffs also bring this action pursuant to Fed R. Civ. P. 23 on behalf of a subclass of similarly situated individuals and entities, defined as follows:

> All loan borrowers in the United States (1) who submitted to SPS a "qualified written request," as defined by 12 U.S.C. § 2605(e)(1)(B), in the form of a Request for Information or Notice of Error, (2) to whom SPS refused to provide information or

perform a reasonable investigation into the asserted errors because of a cited "active litigation" exception, and (3) who submitted to SPS a second "qualified written request," as defined by 12 U.S.C. § 2605(e)(1)(B), in the form of a Notice of Error related to SPS's assertion of an "active litigation" exception.

43. Excluded from the Class and Subclass 1 are (1) Defendant; (2) Defendant's agents; (3) any person(s) who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

44. **Numerosity**: Upon information and belief, the Class is comprised of more than 40 members. This conclusion is reasonable because SPS is one of the largest mortgage providers in the country, which, as of 2017, serviced more than 550,000 loans worth greater than $90 billion,[3] and SPS sent form letters asserting an "active litigation" exception to Plaintiffs and Class members. The Class is so numerous that joinder of all members is impractical. The exact number of members in the Class is presently unknown, can only be ascertained through discovery, and can easily be identified through Defendant's records or by other means.

45. **Commonality and Predominance:** All members of the Class have been subject to and affected by a uniform course of conduct: specifically, SPS refusing to provide information in response to RESPA Request Letters by claiming an "active litigation" exception. There are questions of law and fact common to the proposed classes that predominate over any individual questions.

46. **Typicality:** Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were denied information to which they were entitled because Defendant

---

[3] *Servicer Evaluation: Select Portfolio Serving,* Standard & Poor's Global Ratings, October 10, 2017, https://www.standardandpoors.com/en_US/web/guest/article/-/view/sourceId/10266651 (last visited April 16, 2019)

unlawfully refused to produce information due to an erroneous "active litigation" exception, and Plaintiffs and Class members incurred damages as a result.

47. **Adequacy:** Plaintiffs will adequately represent the interests of the Class and do not have adverse interests to the Class. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiffs' counsel has extensive experience litigating consumer class actions.

## COUNT ONE:
## VIOLATIONS OF 12 U.S.C. § 2605 AND 12 C.F.R. §§ 1024.35 AND 1024.36
(on behalf Plaintiffs and the Class)

48. Plaintiffs repeat and re-allege paragraphs 1-47, with the same force and effect as though full set forth herein.

49. Plaintiffs and Class members submitted RESPA Request Letters to SPS, which were "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B). (*See*, Exhibits 1 and 3).

50. Plaintiffs' and Class members' RESPA Request Letters asserted that there were errors on their loans in need of correction or requested specific information related to their loans pursuant to 12 C.F.R. §§ 1024.35 and 1024.36.

51. SPS failed to provide adequate responses to Plaintiffs' and Class members' RESPA Request Letters. Specifically, SPS did not provide the requested materials concerning specific information or the error resolutions related to the Plaintiffs' and Class members' loans as required by 12 C.F.R. §§ 1024.35 and 1024.36 and 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i), but instead replied with form letters claiming an "active litigation" exception to its obligations. (*See*, Exhibit 2).

52. 12 C.F.R. § 1024.35(g) did, and does, not permit SPS to assert an "active litigation" exception to responding to the requests contained in Plaintiffs' and Class members' RESPA Request Letters.

53. 12 C.F.R. § 1024.36(f) did, and does, not permit SPS to assert an "active litigation" exception to responding to the requests contained in Plaintiffs' and Class members' RESPA Request Letters.

54. SPS's actions, in failing to fully respond to Plaintiffs' and Class members' RESPA Request Letters in compliance with 12 C.F.R. §§ 1024.35 and 1024.36 and 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i) or, alternatively, to state the reason under 12 U.S.C. § 2605(e)(2)(C)(i) and 12 C.F.R. § 1024.36(f)(1) or 12 C.F.R. § 1024.35(g)(1), pursuant to which SPS determined it did not need to comply with 12 C.F.R. §§ 1024.35(e) and 1024.36(d) and 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i), constitute clear violations of the requirements of 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i), as interpreted by 12 C.F.R. §§ 1024.35 and 1024.36, respectively.

55. Plaintiffs and Class members were harmed because they incurred the expenses associated with sending RESPA Request Letters—such as their time, postage, etc.—but they did not receive error resolution sought or the information to which they were legally entitled, pursuant to RESPA and Regulation X.

56. SPS is hiding behind a baseless "active litigation" exception in order to ignore its legal obligations to respond to Plaintiffs' and Class members' RESPA Request Letters in a timely manner.

57. SPS's actions are believed to be the continuation of a pattern and practice of behavior in conscious disregard of Plaintiffs' and Class members' rights.

12

58. As a result of SPS's actions, SPS is liable to Plaintiffs and Class members for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. § 2605(f)(2)-(3).

## COUNT TWO:
## VIOLATIONS OF 12 U.S.C. § 2605 AND 12 C.F.R. §§ 1024.35 and 1024.36
### (on behalf Plaintiffs and Subclass 1)

59. Plaintiffs repeat and re-allege paragraphs 1-47, with the same force and effect as though full set forth herein.

60. Plaintiffs and Subclass 1 members submitted RESPA Request Letters to SPS, which were "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B). (*See*, Exhibit 1).

61. Plaintiffs' and Subclass 1 members' RESPA Request Letters requested the resolution of asserted errors or specific information related to their loans, pursuant to 12 C.F.R. §§ 1024.35 or 1024.36.

62. SPS failed to provide adequate responses to Plaintiffs' and Subclass 1 members' RESPA Request Letters. Specifically, SPS did not provide the requested materials concerning specific information or the error resolutions related to the Plaintiffs' and Class members' loans as required by 12 C.F.R. §§ 1024.35 and 1024.36 and 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i), but instead replied with form letters claiming an "active litigation" exception to its obligations. (*See*, Exhibit 2).

63. 12 C.F.R. § 1024.35(g) did, and does, not permit SPS to assert an "active litigation" exception to responding to the requests contained in Plaintiffs' and Class members' RESPA Request Letters.

64. 12 C.F.R. § 1024.36(f) did, and does, not permit SPS to assert an "active litigation" exception to responding to the requests contained in Plaintiffs' and Subclass 1 members' RESPA Request Letters.

65. SPS's actions, in failing to fully respond to Plaintiffs' and Class members' RESPA Request Letters in compliance with 12 C.F.R. §§ 1024.35 and 1024.36 and 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i) or, alternatively, to state the reason under 12 U.S.C. § 2605(e)(2)(C)(i) and 12 C.F.R. § 1024.36(f)(1) or 12 C.F.R. § 1024.35(g)(1), pursuant to which SPS determined it did not need to comply with 12 C.F.R. §§ 1024.35(e) and 1024.36(d) and 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i), constitute clear violations of the requirements of 12 U.S.C. §§ 2605(e)(2)(B) and 2605(e)(2)(C)(i), as interpreted by 12 C.F.R. §§ 1024.35 and 1024.36, respectively.

66. As a result of SPS's assertion of an erroneous "active litigation" exception to its obligations under RESPA and Regulation X, Plaintiffs and Subclass 1 members were required to send additional "qualified written requests," as that term is defined by 12 U.S.C. § 2605(e)(1)(B), in the form of NOEs. (*See*, Exhibit 3).

67. Had SPS adequately responded to Plaintiffs' and Subclass 1 members' RESPA Request Letters, Plaintiffs and Subclass 1 members would not have needed to send NOEs regarding SPS's erroneous assertion of an "active litigation" exception to its obligations under RESPA and Regulation X.

68. Plaintiffs and Subclass 1 members were harmed because they incurred the expenses associated with sending RESPA Request Letters—such as their time, postage, etc.—but they did not receive the error resolution or the information to which they were legally entitled, pursuant to RESPA and Regulation X.

69. Plaintiffs and Subclass 1 members were also harmed by SPS's failure to adequately respond to their RESPA Request Letters because it required them to incur the time and expenses associated with sending NOEs.

70. SPS is hiding behind a baseless "active litigation" exception in order to ignore its legal obligations to respond to Plaintiffs' and Subclass 1 members RESPA Request Letters.

71. SPS's actions are believed to be the continuation of a pattern and practice of behavior in conscious disregard of the Plaintiffs' and Subclass 1 members' rights.

72. As a result of SPS's actions, SPS is liable to Plaintiffs and Subclass 1 members for actual damages, statutory damages, costs, and attorneys' fees. 12 U.S.C. § 2605(f)(2)-(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Mark and Victoria Keating, individually, and on behalf of the Class and Subclass 1, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Subclass 1 defined herein, as applicable, as to the allegations contained in Counts One and Two;

B. Designating Plaintiffs as representative of the Class and Subclass 1 and their undersigned counsel as Class Counsel, as applicable, as to the allegations contained in Counts One and Two;

C. Entering judgment in favor of Plaintiffs and the Class and against Defendant as to the allegations contained in Count One;

D. Entering judgment in favor of Plaintiffs and Subclass 1 and against Defendant as to the allegations contained in Count Two;

E. Awarding Plaintiffs and the Class their actual damages, statutory damages as allowed under RESPA, and punitive damages as to the allegations contained in Count One;

F. Awarding Plaintiffs and Subclass 1 their actual damages, statutory damages as allowed under RESPA, and punitive damages as to the allegations contained in Count Two;

G. Awarding Plaintiffs and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law as to the allegations contained in Count One;

15

H.     Awarding Plaintiffs and Subclass 1 attorneys' fees and costs, including interest thereon, as allowed or required by law as to the allegations contained in Count Two; and

I.     Granting all such further and other relief as this Court deems just and appropriate.

    Respectfully Submitted,

    /s/ Marc E. Dann
    Marc E. Dann (0039425)
    Daniel M. Solar (0085632)
    Brian D. Flick (0081605)
    DANNLAW
    P.O. Box. 6031040
    Cleveland, Ohio 44103
    Office: (216) 373-0539
    Facsimile: (216) 373-0536
    *notices@dannlaw.com*

    Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
    *tom@attorneyzim.com*
    Matthew C. De Re (*pro hac vice* anticipated)
    *matt@attorneyzim.com*
    ZIMMERMAN LAW OFFICES, P.C.
    77 W. Washington Street, Suite 1220
    Chicago, Illinois 60602
    Office: (312) 440-0020
    Facsimile: (312) 440-4180
    www.attorneyzim.com

    *Counsel for Plaintiffs Mark and Victoria Keating*

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues.

    /s/ Marc E. Dann
    Marc E. Dann (0039425)
    Daniel M. Solar (0085632)
    Brian D. Flick (0081605)
    *Counsel for Plaintiffs Mark and Victoria Keating*